**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| KYLE HAKKARAINEN, ) | CASE NO. 1:10-cv-2463 |
|    obo Natalie Blanton, ) | |
|  ) | JUDGE WELLS |
|    Plaintiff, ) | |
|  ) | MAGISTRATE JUDGE |
|            v. ) | VECCHIARELLI |
|  ) | |
| MICHAEL J. ASTRUE, ) | |
|    Commissioner of Social Security, ) | |
|  ) | |
|    Defendant. ) | **REPORT AND RECOMMENDATION** |

Plaintiff, Kyle Hakkarainen ("Plaintiff"), filed a motion for attorney's fees, expenses, and costs in the total amount of $7,990.38 pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA").  (Doc. No. 40.)  Defendant, Michael J. Astrue, the Commissioner of Social Security ("the Commissioner") does not oppose an award of fees, expenses, and costs pursuant to EAJA, but seeks a reduction of the numbers of hours of services rendered by Plaintiff's counsel and the rate at which the hours were billed.[1]  (Doc. No. 41.)  The presiding District Judge referred the matter to the undersigned United States Magistrate Judge for a report and recommendation.  (*See*

---

[1] The Commissioner also argues that (1) Plaintiff mislabeled his $350.00 filing fee as an "expense," as it should be labeled a "cost," and (2) any EAJA award should be made payable to Plaintiff and not Plaintiff's counsel.  The Commissioner does not object to awarding Plaintiff the $350.00 cost of the EAJA application filing fee; and the Commissioner's argument that any EAJA award should not be made payable to Plaintiff's counsel is moot because Plaintiff made no such request.

Doc. No. 44.) For the reasons set forth below, it is recommended that Plaintiff's motion for EAJA fees be GRANTED in part and DENIED in part; that is, Plaintiff should be awarded a total of $5,297.59 to fully satisfy all reasonable attorney's fees, expenses, and costs incurred under EAJA.

## I. BACKGROUND

On November 10, 2004, Natalie Blanton ("the claimant") protectively filed applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") and alleged a disability onset date of December 15, 2003. (Tr. 16.) Her applications were denied initially and upon reconsideration, so the claimant requested a hearing before an administrative law judge ("ALJ"). (Tr. 16.) On April 10, 2008, an ALJ held the claimant's hearing (Tr. 16), and on April 25, 2008, the ALJ found the claimant not disabled (Tr. 39). The Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision. (Tr. 7.)

On April 17, 2009, the claimant passed away. (Doc. No. 26-1.) On October 28, 2010, Ann A. Blanton—the claimant's mother—filed a complaint on behalf of the claimant to challenge the Commissioner's final decision. (Doc. No. 1.) On April 18, 2011, the Commissioner filed a motion to dismiss the complaint for lack of standing. (Doc. No. 13.) On May 18, 2011, Ann A. Blanton responded to the Commissioner's motion to dismiss. (Doc. No. 16.) She conceded that she did not have standing to challenge the Commissioner's final decision regarding the claimant's application for SSI, but she maintained that she had standing to challenge the final decision regarding the claimant's application for DIB. (Doc. No. 13.) The same day, Ann A. Blanton also

2

filed a motion to amend her complaint. (Doc. No. 17.)

On June 20, 2011, the undersigned Magistrate Judge recommended:

- that the Commissioner's motion to dismiss be granted with prejudice as to the claimant's SSI because Ann A. Blanton conceded she did not have standing regarding that claim;

- that the motion to dismiss be granted without prejudice as to the claimant's claim for DIB because Ann A. Blanton failed to establish that she had standing to pursue that claim;

- that Ann A. Blanton's motion to amend her complaint be denied because the attached proposed amended complaint did not show she had standing; and

- that Ann A. Blanton be permitted to file a second motion to amended her complaint to show that she had standing.

(Doc. No. 20.) The presiding District Judge adopted the Magistrate Judge's recommendation. (Doc. No. 21.)

On July 20, 2011, Ann A. Blanton filed a motion to amend her complaint to add Plaintiff—the claimant's son—as a party plaintiff. (Doc. No. 22.) Also on July 20, 2011, Plaintiff filed a motion to intervene in this case. (Doc. No. 23.) On August 3, 2011, the Court granted Ann A. Blanton's and Plaintiff's motions. (Doc. No. 25.)

On August 16, 2011, Plaintiff filed an amended complaint to challenge the Commissioner's final decision on behalf of the claimant.[2] (Doc. No. 26.) On October 18, 2011, Plaintiff filed his Brief on the Merits. (Doc. No. 32.) Plaintiff asserted three assignments of error: (1) the ALJ failed to deem the claimant's fibromyalgia a "severe impairment"; (2) the ALJ failed to determine whether the claimant's severe rheumatoid

---

[2] Ann A. Blanton did not file an amended complaint and is not named as a plaintiff in Plaintiff's amended complaint.

3

arthritis met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 ("the Listings"); and (3) the ALJ failed to assess the opinions of the claimant's treating sources properly. (Doc. No. 32.) The Commissioner opposed Plaintiff's arguments. (Doc. No. 35.)

On January 19, 2012, the Magistrate Judge recommended that the Commissioner's final decision be reversed and that this case be remanded for further proceedings consistent with the report and recommendation.[3] (Doc. No. 37.) The District Judge adopted the Magistrate Judge's recommendation. (Doc. No. 39.)

On May 7, 2012, Plaintiff filed his motion fees, expenses, and costs under EAJA. (Doc. No. 40.) Plaintiff seeks a total of $7,990.38 for the value of services his counsel rendered in this case between 2010 and 2012, and for the cost of filing the EAJA application and mileage related to Plaintiff's counsel driving to Ashtabula to meet with Plaintiff. The breakdown of the values Plaintiff seeks is as follows:

- $508.35 for services rendered in 2010, based on 3 hours of services rendered at a rate of $169.45 per hour;

- $6,090.00 for services rendered in 2011, based on 34.8 hours of services rendered at a rate of $175.00 per hour;

- $996.13 for services rendered in 2012, based on 5.6 hours of services rendered at a rate of $177.88 per hour;

---

[3] The Magistrate Judge found that Plaintiff's first assignment of error constituted, at most, harmless error, but that the second and third assignments of error were meritorious. That is, the Magistrate Judge found the ALJ improperly: (1) failed to analyze the claimant's rheumatoid arthritis under the Listings at the third step of his analysis; and (2) failed to give adequate reasons for giving little weight to the claimant's treating sources' opinions, as the ALJ's reasons were broadly conclusory, did not explain which opinions were unsupported and how they were inconsistent with the record evidence, and were inherently contradictory.

- $350.00 for the cost of filing the EAJA application; and
- $45.90 for the expense of mileage related to Plaintiff's counsel driving to Ashtabula to meet with Plaintiff and other members of the claimant's family about this case.

(*See* Doc. No. 40-4.)

On May 18, 2012, the Commissioner filed his response. (Doc. No. 41.) The Commissioner does not object to an award of EAJA fees and costs, but only objects to the reasonableness of the number of hours of services rendered in this case and the billing rate at which Plaintiff's counsel seeks compensation.

On June 8, 2012, Plaintiff filed a reply brief. (Doc. No. 43.)

## II. LAW & ANALYSIS

EAJA permits an award of only reasonable attorney's fees. *See* 28 U.S.C. §2412(d)(2)(A). The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *cf. Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161 (1990) ("[O]nce a private litigant has met the multiple conditions for eligibility for EAJA fees, the district court's task of determining what fee is reasonable is essentially the same as that described in *Hensley*.") The Court will address the Commissioner's objections to the reasonableness of hours expended and billing rate in turn.

### A. The Reasonableness of Hours Expended on Services Rendered

Counsel for a prevailing party under EAJA should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise

5

unnecessary. See Hensley, 461 U.S. at 434. Courts should exclude hours that were not "reasonably expended." Id. In this Court's experience, most Social Security cases involve attorney hours ranging between 20 and 25 hours.[4] Additional attorney hours expended on a case may be justified where the issues presented are novel, complex, or extraordinary. See id. (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds, Blanchard v. Bergeron, 489 U.S. 87 (1989)).

Here, Plaintiff seeks EAJA fees for a total of 43.4 hours of services rendered, 14.9 of which were expended to resolve the issue of whether Ann. A. Blanton had standing to bring suit against the Commissioner on behalf of the claimant, and to determine the proper plaintiff in this case. The Commissioner argues that Plaintiff's attorney should not be compensated for those 14.9 hours[5] because, based on Plaintiff's attorney's experience in Social Security law, she easily should have been able to identify the proper plaintiff and proceed in this case accordingly.[6] The Commissioner

---

[4] Plaintiff cites Hayes v. Secretary of Health and Human Services, 923 F.2d 418 (6th Cir.1990) for the proposition that the Sixth Circuit has found that the average number of hours for an attorney to work on a social security case ranges from 30 to 40 hours. Plaintiff's reading of Hayes is inaccurate, as the Sixth Circuit in Hayes merely indicated that the district court below found as much. See id. at 420; accord Caldwell ex rel. Y.B.K. v. Astrue, 518 F. Supp. 2d 777, 778-79 (D. S.C. 2007).

[5] The Commissioner states that 14.3 hours should not be included in Plaintiff's EAJA award for the services rendered between April 18 and August 16, 2011; however, a tally of the hours between April 18 and August 16, 2011, results in a total of 14.9 hours.

[6] The Commissioner also contends, and the Court agrees, that Ann A. Blanton's claim regarding the claimant's SSI application was inappropriate because the law is clear that a claimant's mother is not eligible to receive any disability

6

also takes issue with certain hours related to specific work performed by Plaintiff's attorney, many of which are related to the issue of standing:

- 1.2 hours on October 28, 2010, for allegedly clerical/secretarial work, namely filing a complaint, and preparing and filing summonses and United States Marshal forms;

- 0.8 hours between February 25 and March 18, 2011, for allegedly clerical/secretarial work, namely calendaring due dates and preparing letters to the Commissioner, United States Attorney General, and United States Attorney regarding service of summonses; a certificate of notice to the United States Attorney's Office; and return-of-service forms;

- 0.3 hours on April 22, 2011, for a telephone conversation with probate court;

- 1.4 hours for telephone conversations between counsel and Ann A. Blanton, consisting of 0.5 hours on May 18, 2011 regarding the "status of case" and 0.9 hours on June 21, 2011, regarding the Magistrate Judge's Report and Recommendation;

- 1.0 hour on June 24, 2012, for traveling to Ashtabula to meet and confer with the claimant's family;

- 1.6 hours on June 24, 2011, for meeting with Ann A. Blanton, the claimant's ex-husband, and the claimant's children "to discuss next steps to be taken" and "substitution of son in this case"; and

- 0.5 hours on July 13, 2011, related to filing a separate lawsuit in Plaintiff's name, including preparing related summonses and United States Marshal forms.

For the following reasons, the Court agrees that the hours expended on the issue of standing should be excluded from Plaintiff's EAJA award.

"While the parties' postures on individual matters may be more or less justified, the EAJA . . . favors treating a case as an inclusive whole, rather than as atomized

---

benefits payments the claimant might be due for the period of time the claimant was an adult, and the claimant here was an adult at all times relevant to her SSI application.  Ann A. Blanton quickly conceded this point only after the Commissioner took issue with it.

line-items". *Jean*, 496 U.S. at 161-62. However, "[t]he court, in its discretion, may reduce the amount to be awarded . . . or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy." 28 U.S.C. § 2412(d)(1)(C). "[F]ees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings." 28 U.S.C. § 2412(d)(2)(D). In other words, "absent unreasonably dilatory conduct by the prevailing party in any portion of the litigation, which would justify denying fees for that portion, a fee award presumptively encompasses all aspects of the civil action." *Jean*, 496 U.S. at 161 (internal quotes omitted).

Counsel relied on 42 U.S.C. § 404(d)[7] ("§ 404(d)") and *Youghioheny & Ohio Coal Company v. Webb*, 49 F.3d 244 (6th Cir. 1995),[8] to conclude that Ann. A. Blanton, as

---

[7] § 404(d) provides a descending, prioritized list of seven classes of persons who may receive any outstanding benefits owed to a claimant who is deceased. *See* § 404(d); *Webb*, 49 F.3d at 247. The first three classes are comprised of the deceased claimant's surviving spouse, children, and parents respectively; and their entitlement to benefits is contingent upon their own right as survivors of the deceased beneficiary. § 404(d)(1)-(3); *Webb*, 39 F.3d at 247. The next three classes also are comprised of the deceased claimant's surviving spouse, children, and parents respectively, but they take independently of their eligibility to receive benefits in their own right. § 404(d)(4)-(6); *Webb*, 39 F.3d at 247. Finally, if there is no surviving spouse, children, or parents, the legal representative of the beneficiary's estate receives the benefits for disbursement. *Webb*, 49 F.3d at 247.

[8] In *Webb*, the adult son of a deceased miner, acting as the executor of the decedent's estate, sought and was awarded the decedent's disability benefits pursuant to the Black Lung Benefits Act ("BLA"). *Youghioheny & Ohio Coal Co. v. Webb*, 49 F.3d 246-47 (6th Cir. 1995). The decedent's employer appealed the award and argued that the decedent's claim to benefits abated upon his death because his son was not the miner's *dependent* survivor and there were no dependents eligible to receive the payments. *Id.* at 247. The

8

the claimant's mother, had a legally protected financial interest in any disability benefits to which the claimant might have been entitled and, therefore, could challenge the Commissioner's unfavorable final decision on the claimant's behalf.  *Blanton ex rel. Blanton v. Astrue*, No. 1:10-cv-2463, 2011 WL 2637224, at *3 (N.D. Ohio June 20, 2011).  But the law on which counsel relied supported the conclusion only that Ann A. Blanton *could be* entitled to receive benefits if no other people had priority over her.  *Id.*

The Magistrate Judge found that Ann A. Blanton failed to establish she had standing in this case because the record revealed the claimant had surviving children, and Ann A. Blanton made no showing in her complaint that she was entitled to, and had priority to, the claimant's possible DIB underpayment.  *Id.*  That is, the Magistrate Judge found that Ann. A. Blanton failed to establish she had an actual right to the claimant's possible disability benefits and that a deprivation of her right to such benefits was imminent.[9]  *Id.*  The Magistrate Judge recommended that Ann A. Blanton be permitted to file an amended complaint to make such a showing.  *Id.* at *4.  Instead of making such a showing, counsel substituted Plaintiff, the claimant's surviving child, as the plaintiff.

The practical and cost-effective response to the Commissioner's challenge to Ann A. Blanton's standing would have been to substitute Plaintiff for Ann. A. Blanton

---

court observed that § 404(d) was incorporated into the BLA, and held that "[a] member of any of the enumerated classes [in § 404(d)] has standing to pursue the deceased beneficiary's benefits."  *Id.*  Accordingly, the court found that the son properly pursued the deceased miner's benefits as the deceased miner's non-dependent child.  *Id.* at 249.

[9] The District Judge adopted the Magistrate Judge's report and recommendation based on that finding because neither party objected to it.  (Doc. No. 21.)

9

immediately rather than engage in protracted proceedings that lead to the same result.[10]  Under the circumstances of this case, and in light of Plaintiff's counsel's extensive experience in Social Security law,[11] Plaintiff's counsel's efforts at maintaining Ann A. Blanton as the plaintiff in this case were unreasonable.  Accordingly, the 14.9 hours of services rendered between April 18 and August 16, 2011, on matters related to the issue of standing should be excluded from Plaintiff's total EAJA award.

The remaining hours with which the Commissioner takes issue are those related to allegedly clerical/secretarial work performed on October 28, 2010, and on February 25 and March 18, 2011.  Plaintiff explains that the work is not actually clerical/secretarial in nature because the work was performed by counsel, "although the written work was ultimately typed by an assistant."  (Pl.'s Reply 4.)  Plaintiff further explains that counsel calendars due dates, even though her assistant and clerk also calendar due dates, "to maintain a redundant calendaring system that avoids missed deadlines." (Pl.'s reply 4.)  The Court appreciates counsel's efforts to manage her office in an efficient manner.  Nevertheless, the mere fact that counsel performed the work does not change the work's status as clerical/secretarial and justify a higher rate of

---

[10]  Indeed, the record reveals that counsel was aware of Plaintiff at the outset of her representation in this case, as counsel avers in her affidavit attached to Plaintiff's motion that she "was first retained to represent *Kyle Hakkarainen* on behalf of [the claimant] on May 17, 2005."  (Paulette Balin Aff. ¶ 2, Doc. No. 40-2) (emphasis added).  It is not clear why counsel was retained to represent Kyle Hakkarainen on behalf of the claimant on May 17, 2005, as the claimant did not die until almost four years later.

[11]  Counsel avers that she has represented Social Security claimants since 1979, and that Social security disability has been her primary area of practice since approximately 1994.  (Balin Aff. ¶ 1.)

10

compensation. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) (quoting *Johnson*, 488 F.2d at 717) ("It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it."); *Holden v. Bowen*, 668 F. Supp. 1042, 1048 (N.D. Ohio 1986) ("[S]killed attorneys being paid high rates because of their unique talents should not receive full compensation for purely ministerial duties.")

Preparing and reviewing service forms are not clerical in nature, and attorneys should be compensated for performing such work at their normal rates. However, activities such as filing a complaint, filing service requests, and filing return of service forms are clerical tasks that, even if performed by an attorney, should be compensated at a lesser rate. *See Taylor v. Barnhart*, No. 00 c 7782, 2002 WL 31654944 at *4 (N.D. Ill. Nov. 22, 2002). *But see Knudsen v. Barnhart*, 360 F. Supp. 2d 963, 977 (N.D. Iowa 2004) (finding that retrieving documents, filing documents, serving summonses, and calendaring are non-compensable because they are properly considered overhead costs); *Barriger v. Bowen*, 673 F. Supp. 1167, 1170 (N.D.N.Y. 1987) (finding that mailing two letters and serving the Assistant United States Attorney with a copy of a summons and complaint are non-compensable because they are properly considered overhead costs). Purely clerical or secretarial tasks, that is, *non-legal* work, should not be billed at even a paralegal rate, regardless of who performs the work. *Jenkins*, 491

U.S. at 288 n.10. For example, dictation and typing are non-compensable, as they are part of the overhead of any law office. *See Wiegand v. Sullivan*, 900 F.2d 261 (Table), 1990 WL 51387, at *1 (6th Cir. 1990) (affirming the district court's reduction of fees).

The hours with which the Commissioner takes issue that were expended on preparing and filing legal documents should not be reduced; rather, as explained below, the value of those hours should be reduced based on whether attorney rates or paralegal rates apply. The hours expended on calendaring due dates, however, is purely clerical or secretarial, and Plaintiff's counsel should not be compensated for that work. Accordingly, counsel's hours of work on February 25, 2011, should be reduced by 0.1 hours.

### B. The Appropriate EAJA Fee Billing Rate

EAJA provides that "[t]he amount of fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the services furnished," and "fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A); *see Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 449-50 (6th Cir. 2009). Here, Plaintiff seeks EAJA fees at an hourly billing rate in excess of $125.00 based an increase in the cost of living caused by inflation since 1996.

In requesting an increase in the $125 per hour rate under EAJA, plaintiffs bear the burden of producing appropriate evidence to support the requested increase. *Bryant*, 578 F.3d at 450. That is, plaintiffs "must produce satisfactory evidence—in

12

addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). It is within the courts discretion to award EAJA fees at a rate greater than $125.00 per hour. *See Begley v. Sec'y of Health & Human Servs.*, 966 F.2d 196, 199 (6th Cir.1992).

Plaintiff's calculation of the cost of living increase is based on the United States Bureau of Labor and Statistics' Urban Consumer Price Index[12] ("CPI") for the Cleveland and Akron, Ohio, area in 2010, 2011, and 2012. Plaintiff explains that the appropriate hourly billing rate under EAJA for services rendered each year is determined by dividing the CPI for the year in which services were rendered by the CPI for March 1996 multiplied by $125.00. *See also Lopez v. Comm'r of Soc. Sec.*, No. 3:08-cv-2148, 2010 WL 1957422, at *3 (N.D. Ohio May 14, 2010) (The Magistrate has routinely calculated the cost of living adjustment by accounting for increases in the cost of living between the time the $125 fee was enacted and the time that the fee was earned . . . . by comparing the CPI from March 1996 . . . to the average annual CPI during the year that counsel rendered his or her services."). Accordingly, Plaintiff explains that the EAJA rate for 2010 is 204.573 divided by 150.9 and then multiplied by $125.00, which equals $169.45; the EAJA rate for 2011 is 211.234 divided by 150.9 and then multiplied by $125.00, which equals $175.00; and the EAJA rate for 2012 is 214.743 divided by 150.9 and then multiplied by $125.00, which equals $177.88.

---

[12] The Bureau of Labor and Statistics' CPI calculator may be found online at http:// www.bls.gov/data/#prices (last visited June 25, 2012).

13

The Commissioner does not take issue with Plaintiff's method of calculating an increase in the cost of living based on inflation, but contends that the CPI, alone, is not enough evidence to show an award of EAJA fees at a rate in excess of $125.00 per hour is reasonable and, therefore, warranted.[13] However, Plaintiff cites to other evidence in support of his contention that his counsel's requested billing rates in this case are reasonable. First, he cites and attaches to his motion a study performed by the Ohio State Bar Association ("OSBA") titled *The Economics of Law Practice in Ohio, Desktop Reference for 2010*, that indicates that the mean hourly billing rate at law firms in "Downtown Cleveland" was $275.00; the mean billing rate at law firms in "Suburban Cleveland" was $213.00; and the mean billing rate at law firms in "Greater Cleveland" was $239.00. (Doc. No. 40-1, at 23.) Second, he cites a 2010-2011 survey performed and published by Ronald L. Burdge, Esquire, that reports that attorneys with between 16 and 20 years of experience practicing "consumer law" in "Ohio Region Firms" billed an average hourly rate of $323.00.[14] Third, he cites and attaches to his motion the affidavit of his counsel, wherein counsel avers, in part, that she has practiced Social Security disability law for 18 years. (*See* Balin Aff. ¶ 1.) Fourth, Plaintiff cites and attaches to his motion the affidavit of Ms. Sabrina Veal, who alleges that she is

---

[13] Indeed, the Sixth Circuit has held that the CPI, alone, is insufficient evidence to warrant an award of EAJA fees at a rate greater than $125.00. *Bryant*, 578 F.3d at 450.

[14] *See* Ronald L. Burdge, *United States Consumer Law Attorney Fee Survey Report 2010-2011*, at 24 (2011), *available online at* http://www.lb7.uscourts.gov/documents/ILSD/11-53.pdf (last visited June 25, 2012). Plaintiff does not attach Mr. Burdge's survey as an exhibit to his motion but cites the location of the survey on the Internet.

14

Plaintiff's counsel's "case manager" and that counsel's usual hourly billing rate over the past two years has been between $350.00 and $385.00. (Sabrina Veal Aff. ¶ 5, Doc. No. 40-3.)

The Commissioner contends that Plaintiff's showing remains insufficient. The Commissioner cites *Mathews-Sheets v. Astrue*, 653 F.3d 560, 565 (7th Cir. 2011), to suggest that in order for Plaintiff to justify his requested cost-of-living-increase in the EAJA rate, he must show that no competent attorneys in the geographical area could be found to handle Social Security cases at a rate less than those his counsel seeks. However, the Seventh Circuit's opinion is not binding precedent on district courts within the Sixth Circuit; and the Commissioner's argument conflates the two separate justifications for an increase in the $125.00 rate under EAJA—either an increase in the cost of living, or a special factor such as the limited availability of qualified attorneys for the proceedings involved. See *Teel v. Comm'r of Soc. Sec.*, No. 1:10-cv-613, 2012 WL 1940627, at *3 (S.D. Ohio May 29, 2012).

The Commissioner also cites *Willis v. Astrue*, No. 1:10-cv-594, 2012 WL 481357, at *3 (S.D. Ohio Feb. 14, 2012), in support of the contention that the OSBA study is inadequate to establish the reasonableness of Plaintiff's counsel's requested billing rates because it "does not specify the prevailing rate in the local community charged by Social Security practitioners of similar skill, experience, and reputation." (Def.'s Br. 8.) For the following reasons, however, *Willis* is inapposite.

The court in *Willis* rejected the plaintiff's requested cost-of-living increase under EAJA because the plaintiff's sole evidentiary basis for his requested increase was the

15

Bureau of Labor and Statistics' CPI. *Willis*, 2012 WL 481357, at *3. The court explained that it "now requires additional proof such as affidavits from other members of the local bar in which they testify as to their years of experience, skill, and reputation, and thus their consequent hourly rate, or alternatively, results of a fee survey conducted by a state or local bar association committee comprised of lawyers in the social security area of practice." *Id.* (quoting *Zellner v. Astrue*, No. 1:10-cv-812, 2012 WL 273937, at *3 (S.D. Ohio Jan. 31, 2012)) (internal quotes omitted).[15] Here, Plaintiff has presented additional evidence.

Further, the Sixth Circuit does not require a showing that the requested rates be in line with those prevailing in the community for *identical* services, but only for *similar* services. See *Bryant*, 578 F.3d at 450. Courts have found the OSBA study upon which Plaintiff relies useful in determining the legal fees charged by attorneys with reasonably comparable skill, experience, and reputation who render similar services in the same geographic area. *Renneker v. Comm'r of Soc. Sec.*, No. 1:10-cv-386, 2011 WL 6950510, at *5 (S.D. Ohio Dec. 8, 2011).

Finally, since *Bryant*, in this District the Commissioner has stipulated to an award of EAJA fees at a rate greater than $125.00 based on a cost-of-living increase when the

---

[15] In *Zellner*, Senior District Judge Spiegel expressed that "in the future what we will require to comport with *Bryant*[] will be affidavits from other members of the local bar in which they testify as to their years of experience, skill, and reputation, and thus their consequent hourly rate," and "[m]ost preferable would be the results of a fee survey conducted by a state or local bar association committee comprised of lawyers in the social security area of practice." *Zellner*, 2012 WL 273937, at *3. This Court, however, is not aware of any legal authority from the Sixth Circuit that requires such a specific evidence showing to justify a cost-of-living increase in the EAJA fee rate.

16

plaintiff provided evidence the CPI along with his counsel's resume and time sheet. *See Terry v. Comm'r of Soc. Sec.*, No. 5:09-cv-2025, slip op. at 1-2 (N.D. Ohio Sept. 8, 2010) (granting the parties' stipulation to a rate of $155.66 per hour under EAJA). More recently, in this District the Commissioner has not objected to cost-of-living increases under EAJA when the plaintiffs provided evidence of the CPI along with counsel's resumes and time sheets. *See* [Bates v. Comm'r of Soc. Sec., No. 3:09-cv-2349, 2011 WL 2149349, at *2 (N.D. Ohio Apr. 27, 2011)](#) (not objecting to the plaintiff's request for EAJA fees at a rate of $173.62 per hour); *Woods v. Comm'r of Soc. Sec.*, No. 1:10-cv-1714, slip op. at 9 (N.D. Ohio Feb. 17, 2012) (contending only that the rate under EAJA should be $171.38 per hour rather than the requested $179.51 per hour).

Here, based on Plaintiff's evidence of the increase in the cost of living and prevailing market rates in this area, and in light of recent cases in this District, the Court finds that Plaintiff's requested EAJA fee rates are reasonable.

### C. Calculation of Fees, Expenses, and Costs

Based on the foregoing, Plaintiff should be awarded EAJA fees, expenses, and costs as follows.

In 2010, counsel expended a total of 3.0 hours on services rendered. 0.2 of those hours should be billed at paralegal rates to account for the filing of documents on October 28, 2010. Based on this Court's experience and knowledge of customary paralegal rates in the community, the Court finds $60.00 per hour is fair compensation for such tasks. Accordingly, Plaintiff should be awarded a total of $486.46 for services

17

rendered in 2010.[16]

In 2011, after deducting the hours expended on the issue of standing, Plaintiff's counsel expended a total 19.9 hours on services rendered. 0.1 of those hours should be deducted to account of counsel's calendaring on February 25, 2011, for a total of 19.8 hours. Accordingly, Plaintiff should be awarded a total of $3,465.00 for services rendered in 2011.[17]

In 2012, counsel expended a total of 5.6 hours on services rendered. Accordingly, Plaintiff should be awarded a total of $996.13 for services rendered in 2012.[18]

The Commissioner does not object to Plaintiff's request for $350.00 for the cost of the district court filing fee. Indeed, such a cost is compensable under EAJA. *Bates, 2011 WL 2149349, at *2*.

The Commissioner also does not object to Plaintiff's request for $45.90 for his counsel's mileage expense from driving to Ashtabula; however, the Commissioner objects to all of counsel's hours expended on the issue of standing, which necessarily includes traveling to Ashtabula. Accordingly, the $45.90 related to mileage should be excluded from Plaintiff's EAJA award.

The Court's assessment of fees, expenses, and costs is summarized in the following table:

---

[16] (2.8 hours * $169.45 per hour) + (0.2 hours * $60.00 per hour) = $486.46.

[17] 19.8 hours * $175.00 per hour = $3,465.00.

[18] 5.6 hours * $177.88 per hour = $996.13.

18

|  | Hours Requested | Rate/value Requested | Total Requested | Hours Approved | Rate/value Approved | Total Approved |
|---|---|---|---|---|---|---|
| 2010 | 3.0 | $169.45 | $508.35 | 2.8 | $169.45 | $474.46 |
|  |  |  |  | 0.2 | $60.00 | $12.00 |
| 2011 | 34.8 | $175.00 | $6,090.00 | 19.8 | $175.00 | $3,465.00 |
| 2012 | 5.6 | $177.88 | $996.13 | 5.6 | $177.88 | $996.13 |
| Costs |  | $350.00 | $350.00 |  | $350.00 | $350.00 |
| Expenses |  | $45.90 | $45.90 |  | $0.00 | $0.00 |
| **Totals** | **43.4** |  | **$7,990.38** | **28.4** |  | **$5,297.59** |

In sum, as indicated in the table above, Plaintiff should be awarded a total of $5,297.59 under EAJA.[19]  The Court finds this amount reasonable and appropriate to satisfy all reasonable fees, expenses, and costs incurred under EAJA.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff should be awarded a total of $5,297.59 under EAJA to satisfy all reasonable fees, expenses, and costs incurred thereunder.

s/ <i>Nancy A. Vecchiarelli</i><br>
U.S. Magistrate Judge

Date:  June 27, 2012

### OBJECTIONS
Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of this notice.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[19]  Plaintiff's total number of compensable hours remains greater than that which, in this Court's experience, is typically involved in Social Security cases.

19